---

### THE J. J. HILL.[*]

(Circuit Court of Appeals, Seventh Circuit. April 29, 1919. Rehearing Denied September 24, 1919.)

No. 2648.

COLLISION ☞85—ALLEGATION OF FAULT ON STEAMERS MEETING IN FOG NOT SUSTAINED.

Allegations by libelant of fault causing a collision between meeting steamers on Lake Superior at night in a fog *held* not sustained by the evidence.

Appeal from the District Court of the United States for the Western District of Wisconsin.

Suit in admiralty for collision by J. R. Smith and others against the steamer J. J. Hill. Decree for respondent, and libelants appeal. Affirmed.

Charles E. Kremer, of Chicago, Ill., for appellants.
G. W. Cottrell, of Cleveland, Ohio, for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge. On the night of June 26, 1916, in Whitefish Bay, Lake Superior, in a heavy fog, appellant's wooden steamer Panther, down-bound via the Soo, collided with appellee's up-bound steel steamer J. J. Hill, without cargo, causing the sinking and total loss of the Panther and her cargo of wheat. The joint libel by the ship and cargo owners charges the Hill with sole fault for the collision, and seeks recovery for the damage. The answer denies fault on the part of the Hill, placing the entire blame on the Panther. The Hill sustained no damage and filed no cross-libel. The District Court dismissed the libel.

Assuming that the collision was the result of accident, without admixture of deliberate intent to cause it, it is plain there was a serious mix-up in the exchange, understanding, or observance of signals between the boats, involving at best egregious blundering on the part of one or both.

It was testified for the Panther that the Hill gave her a one-blast passing signal, to which the Panther responded with a one-blast signal, thus establishing, under rule 1 of the Pilot Rules of the Great Lakes, an understanding between the boats to direct their courses starboard, so they would pass port to port. It was testified for the Hill that the two-blast passing signal was exchanged between the boats, whereby under the rule they agreed to direct their courses to port, passing starboard to starboard. After interchange of passing signals, whatever they were, it seems both boats starboarded, resulting in their then moving on converging lines, coming into view of each other too late to avoid the collision which followed.

The burden is upon the libelant to show by preponderance of the evidence that fault of the Hill contributed to causing the collision. The Clara, 102 U. S. 200, 26 L. Ed. 145; The Minnie, 225 Fed. 36, 140 C. C. A. 362. The masters, who were directing the movements of their respective boats, testified positively, the one to the exchange of one-blast passing signals, and the other to the exchange of two-blast passing signals. Apart from other members of the crews who corroborated their respective masters, there is practically nothing in the record in further support of either contention, and one cannot well read the record and weigh the evidence adduced on the respective sides without reaching the conclusion that the libelants have failed to sustain their burden of proving fault on the part of the Hill.

It was testified that the Hill, about the time it heard the Panther's fog signal, checked its normal speed of about 13 miles an hour to approximately half, and then to dead slow, 2 or 3 miles an hour, and that very shortly before the collision it had scarcely steerageway, making it necessary to give a kick ahead, the effect of which had hardly been felt before the collision occurred. It is contended for the Panther that the speed of the Hill must have been much greater to account for the stem of the Hill cutting several feet into the port side of the Panther just forward of her boilers. This is explained on behalf of the Hill by the contention that, as the Hill came within view of the Panther, the latter swung sharply to starboard, toward and against the stem of the Hill, which, having reversed her engines, was then almost if not quite at a standstill.

But the movement of the Panther is reconcilable neither with the Pilot Rules nor with ordinary prudence. Rule 15 provides:

"Every vessel shall, in thick weather, by reason of fog, mist, falling snow, heavy rain storms, or other causes, go at moderate speed. A steam vessel hearing, apparently not more than four points from right ahead, the fog signal of another vessel shall at once reduce her speed to bare steerageway, and navigate with caution until the vessels shall have passed each other."

As to her speed, her master testified that she was moving practically at her full speed of about 8 miles an hour from the time she started until the collision occurred. He contended that this was a moderate rate, albeit approximating her full speed; but to this we cannot accede, particularly as in those waters there converged and passed a traffic larger than anywhere on the Great Lakes. But in view of her master's testimony that he had heard the Hill's signals apparently

not more than four points from right ahead, it would seem that failure to reduce speed at all, to say nothing of bare steerageway as provided in the rule, involves the Panther in a palpable violation of rule 15, contributing directly to the collision.

The decision of the cause depends wholly on matters of fact, and where, as here, the controlling facts must be determined upon irreconcilably contradictory testimony of witnesses, the court before whom they testified possessed an added advantage in passing upon their credibility, and the weight to be accorded their testimony, and we would be even less warranted in disturbing the conclusion of facts which that court reached.

The decree of the District Court is affirmed.